IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| MID-SOUTH ORGANIZING COMMITTEE, and ANTONIO BLAIR CATHEY, | ) ) ) | |
| *Plaintiffs,* | ) ) ) | |
| v. | ) ) | |
| CITY OF MEMPHIS, MAYOR JAMES STRICKLAND, in his official capacity only, and DIRECTOR MICHAEL RALLINGS, in his official capacity only, | ) ) ) ) ) ) | Civil Action No. _____<br><br>JURY DEMAND |
| *Defendants*. | ) ) ) | |

## VERIFIED COMPLAINT

1. Plaintiffs Mid-South Organizing Committee ("MSOC") and Antonio Blair Cathey state for their Verified Complaint as follows:

## INTRODUCTION

2. The MSOC is a labor organization that focuses its efforts on labor and community organizing activities throughout the Mid-South, including in Memphis, Tennessee since July 2013. These activities include organizing fast food and homecare workers to improve working conditions in both industries. The MSOC and its worker activists engage in advocacy to raise the mandated minimum wage for all workers through ordinances and state legislation, including efforts to lobby members of city councils like the Memphis City Council. The MSOC and its worker activists also work to build coalitions of citizens around issues affecting the working poor.

1

3. The MSOC has organized the Fight for $15 initiative in Memphis, called Memph15. Through the Memph15 initiative, MSOC's worker activists have joined thousands of fast food workers around the United States to demand that fast food companies pay their workers living wages.

4. As discussed further in this Complaint, on several occasions since at least December 2014, the MSOC's worker activists have been targeted by the Memphis Police Department as a result of their MEMPH15 activities. This improper targeting by the Memphis Police Department has included improper and illegal surveillance tactics of MSOC's worker activists. MSOC's worker activists have also been subjected to the inconsistent enforcement of city permitting requirements that have interfered with the exercise of their First Amendment rights to peacefully assemble, protest, and demonstrate. Finally, some MSOC's worker activist have been "blacklisted" at Memphis City Hall restricting their ability to freely enter this public building without armed escorts.

**PARTIES**

5. Plaintiff MSOC is a labor organization, focused on organizing fast food and homecare workers to improve working conditions in both industries. Both homecare and fast food are two of the lowest paid industries in the Mid-South. MSOC also supports the Fight for $15, known as MEMPH15 in Memphis, an advocacy initiative to raise the minimum wage for workers throughout the United States to $15 per hour, including Memphis. MSOC and dozens of its worker activists have engaged in these organizing and advocacy activities in Memphis since July 2013. MSOC's headquarters are located at 438 N. Skiner, St. Louis, MO 63130. MSOC's local office in Memphis, Tennessee is located at 1000 S. Cooper Street, Memphis, TN 38104.

6. Plaintiff Antonio Blair Cathey is a 24 year-old African American male who is a resident of Memphis, Shelby County, TN. Plaintiff Cathey has been active with MSOC since July 2013, first as a worker activist, then as an organizer. Plaintiff Cathey has worked full-time as an organizer for MSOC since early 2015. Plaintiff Cathey currently serves as a Memphis City Lead Organizer. Plaintiff Cathey typically acts as a police liaison at strikes and other public Union activities.

7. Defendant City of Memphis is a municipality duly organized and incorporated as a political subdivision of the State of Tennessee that operates the Memphis Police Department.

8. Defendant Mayor James Strickland is the duly elected mayor of the City of Memphis. He is sued in his official capacity only.

9. Defendant Director Michael Rallings is the Director of the Memphis Police Department ("MPD"). He is sued in his official capacity only.

## FACTS

10. Since the outset of MSOC's organizing activities in Memphis, the MPD has engaged in a pattern and practice of various intimidation tactics aimed at discouraging MSOC and its members and volunteers from engaging in protected free speech activities.

11. These intimidation tactics have taken three principal forms. First, MPD and its officers have engaged in improper and illegal surveillance tactics aimed at having a chilling effect on the freedom of speech and the right to assemble or associate. Second, MPD has inconsistently enforced a city permitting ordinance in a manner that has had a disparate impact on MSOC's organizing and free speech activities. Third, Defendants have conspired to chill the free expression rights of MSOC's worker activists, by having three of its organizers, including Plaintiff Cathey, placed on a so called "blacklist" prohibiting them from entering Memphis City

Hall unless escorted by an armed security guard, even though none of these individuals have a history of violence or have made any statements or undertaken any actions that Defendants could reasonably construe as posing a threat to the safety and well being of others inside City Hall.

I. **MPD's improper and illegal surveillance tactics**

12. The MPD has engaged in an unconstitutional pattern and practice of using improper surveillance tactics to discourage Plaintiff Cathey from expressing his opinions and beliefs and from organizing others who share these opinions and beliefs.

13. Throughout the course of MSOC's activities in and around Memphis, a number of demonstrations or actions have occurred in close proximity to McDonald's restaurants. On multiple occasions during MSOC events and demonstrations, MPD seemed to take direction from McDonald's and Plaintiff Cathey was told on multiple occasions by MPD officers that they had "authorization from the President of McDonald's to make arrest."

14. On April 14, 2016, Fight for $15 engaged in a day-long, nationwide strike. In Memphis on that day, Fight for $15 held multiple events. At the conclusion of one event, multiple MPD squad cars began following a van carrying Plaintiff Cathey and other protesters as the van travelled throughout the city dropping individuals off. The patrol cars followed the van for approximately 15 minutes despite the fact that the van was following all state and local motor vehicle ordinances and none of the protestors had engaged in any illegal or otherwise improper conduct.

15. Later that day, Plaintiff Cathey arrived at an event at the McDonald's restaurant located at 5299 Poplar Avenue. Fight for $15 had sought and received a permit to hold the event. The MPD was at the event in full force with two "paddy wagons" on the ready to arrest protestors. The protest was peaceful and the protestors remained on public property. At one

point, Plaintiff Cathey spoke to a MPD detective who warned him he would be the "first to go" if any arrests were made.

16. During the course of this event, two MPD officers used iPads to make video recordings of the protestors despite the fact that the protestors were peaceful, were complying with all laws and ordinances, and the officers had no reason to suspect that any of the protestors had engaged in any illegal conduct. The video recording was done for no purpose other than to harass and intimidate the protestors and to discourage them from exercising their First Amendment rights.

17. On February 6, 2017, Fight for $15, held a "teach-in" about the then-nominee for Secretary of Labor at its Cooper Street office. The event was publicly advertised and open to anyone in the community interested in learning more.

18. During the course of the day, MPD surveilled the activities taking place at the Cooper Street office with four unmarked police vehicles staged at the intersections around the building and one MPD patrol car parked in the parking lot. The activities inside the building were peaceful and consisted simply of presentations and teaching sessions about the background of the nominee for Secretary of Labor. The meeting was attended by a number of fast food workers.

19. At the conclusion of the meeting of fast food workers, Plaintiff Cathey left the office in a vehicle with other attendees of the teach-in, and the police cars that had been surveilling the office proceeded to follow them. The police informed Plaintiff Cathey that they would stop following them by saying "When ya'll are done, we'll be done."

20. Plaintiff Cathey eventually pulled his vehicle into a gas station and a police car pulled into the station as well. Plaintiff Cathey approached the police officer and asked why the

officers were following him. The officer responded by saying, "We're just trying to make sure everyone stays safe."

21. After leaving the gas station, Plaintiff Cathey proceeded to one of teach-in attendee's home in order to drop her off, and a marked patrol car continued to follow. Upon arrival at the home, Plaintiff Cathey again approached the officer and asked why he was being followed. This officer similarly replied that he was making "sure everything is safe." Plaintiff Cathey asked the officer if he was following orders and if so by whom, and the officer replied, "That is none of your business."

22. Plaintiff Cathey proceeded to call Defendant Rallings to complain about being followed by multiple MPD officers when he was not engaged in any activities that would give rise to any probable cause or other basis to warrant any investigation or attention by the MPD. Director Rallings responded he was unaware of the situation but that he would look into the matter.

23. Growing impatient with the situation, Plaintiff Cathey called the local precinct and explained the situation and requested that a lieutenant be sent to his location. Eventually, a lieutenant and a colonel arrived, but they would not offer any explanation as to why Plaintiff Cathey was being followed except to say that the officers were "just trying to keep everything safe."

24. Plaintiff Cathey left that location and proceeded to drop off workers. The MPD continued to follow the vehicle until most or all of the workers had been dropped off.

25. MPD's surveillance and intimidation tactics not only violate the constitutional rights of free expression and association guaranteed by both the Tennessee and United States constitutions, but they also violate the terms and conditions of a 1978 Consent Order that

remains in full force and effect. See **<u>Exhibit A.</u>** Plaintiffs are beneficiaries of this Consent Order, and the surveillance and intimidation tactics described above plainly violate the Consent Order.

26. The Consent Order was entered on September 14, 1978, by this Court in *Kendrick v. Chandler*, Civil Action No. C76-449, and is binding upon the City of Memphis and the MPD.

27. One of the terms of the Consent Order is as follows:

> The defendants and the City of Memphis shall not engage in any action for the purpose of, or reasonably having the effect of, deterring any person from exercising First Amendment rights. As an example, the City of Memphis shall not, at any lawful meeting or demonstration, for the purpose of chilling the exercise of First Amendment rights or for the purpose of maintaining a record, record the name of or photography any person in attendance, or record the automobile license plate numbers of any person in attendance.

28. At no time during the above described events was Plaintiff Cathey, or any other MSOC organizers, engaged in any illegal, threatening or otherwise dangerous activity that would threaten public safety or otherwise justify Defendant's abandonment of its obligations to follow the terms of the Consent Order.

## II. <u>MPD's inconsistent enforcement of city permitting requirements</u>

29. Over the last four years, MSOC has held numerous events throughout the City of Memphis that have involved the assembly of supporters, members, and organizers expressing their support for low wage earners and an increase in the minimum wage. During these events, the City of Memphis has enforced its permitting requirements in a manner designed to harass and deter MSOC.

30. On December 4, 2014, for example, MSOC organized an event at Douglass Park that was attended by approximately 40 striking fast food workers and community members. The majority of those in attendance were African American. Shortly after the event commenced, the

group was commanded to disperse because the group lacked a permit.[1] MSOC ended the event as a result.

31. On April 15, 2015, MSOC, through the Fight for $15 initiative, organized two permitted protests, one in the morning and one in the evening. For these protest, MPD installed (and subsequently removed) Blue CRUSH (Crime Reduction Utilizing Statistical History) cameras, followed protesters to their cars, and took photographs of their license plates.

32. In addition to setting up cameras to monitor the event, MPD informed the surrounding community of the planned actions and informed the nearby St. Anne Catholic School that attending these actions would be protestors from Ferguson, Missouri. As a result, the school was closed and informed parents via email that "in consultation with the Memphis Police and the Diocese of Memphis Catholic Schools Office" the school would be closed due to concerns about "our students' safety and well-being."

33. On April 14, 2016, MSCO, through Fight for $15, held several rallies around the city. At one of these rallies, Plaintiff Cathey and approximately 15 fast food workers were met by approximately 30 police officers who wore gloves and had twist restraints in hand. Several of these officers subsequently followed Plaintiff Cathey and some of the workers as they drove from the rally to various other points in Memphis.

34. Additionally, Plaintiff Cathey also noticed that Steve Lykens, a Century Management corporate employee (a company that owns and operates McDonald's in and around Memphis), was also following the workers as they travelled throughout the city in a gray Ford truck. Both the MPD patrol cars and Lykens followed Plaintiff Cathey and the workers for approximately 15 minutes until they arrived at a worker's apartment building. Plaintiff Cathey

---

[1] Pursuant to Memphis's Code of Ordinances, Sections 12-52-1 and 12-52-2, groups of 25 or more individuals must obtain a permit from the city before assembling in public.

and the workers waited approximately five minutes for both the police and Lykens to leave before travelling on to the next stop.

35. Later in the day of April 14, 2016, at another Fight for $15 action, the police staged two paddy wagons just outside of the area where the rally took place, and two MPD officers took videos of the protest with their iPads.

36. On November 29, 2016, MSCO, through Fight for $15, held a series of actions around Memphis. Again, even though Fight for $15 obtained a permit for the larger of these rallies, approximately 15 MPD squad cars were on the scene, and several of the squad cars then followed the attendees as they drove away from the event.

37. Unlike the above-described events, Plaintiff Cathey and Plaintiff MSOC's other organizers have witnessed other organizations hold events, rallies, and demonstrations without a permit and have witnessed the MPD not enforcing the permitting requirement or requiring those participants to disband even though their numbers well exceeded 25.

38. On April 4, 2015, a group of approximately 35-40 people, most of whom were white, attended an action sponsored by WIN. MPD arrived shortly after the action began. Despite the fact that WIN did not have a permit for the action, MPD simply asked the organizers to move the action off of a business's property and onto the sidewalk.

39. On May 1, 2015, the Memphis Socialist Party held an action protesting Bass Pro Shop's discriminatory promotion practices. The rally was attended by more than 30 people, the overwhelming majority of whom were white. The MPD remained in the vicinity of the action, but the officers never approached the protesters or interfered with the action. The Memphis Socialist Party did not obtain a permit for their action.

**III. MSOC organizers have been targeted by Defendants by being "black listed" at Memphis City Hall**

40. On or around February 20, 2017, various media outlets began reporting that 84 individuals had been placed on a so called "blacklist." As a result, security guards at Memphis City Hall had been instructed by Defendants to prohibit the entry of anyone on the blacklist unless escorted by an armed security guard. A copy of the so called "blacklist" is attached hereto as **Exhibit B.**

41. The blacklist contains the names of 84 individuals. Three of these individuals are MSOC organizers: Ms. Jayanni Webster, Mr. Keedran Franklin, and Plaintiff Antonio Cathey.

42. Ms. Webster is a citizen and resident of Memphis. She has neither made statements nor undertaken actions that could reasonably be construed as posing a "security threat" to anyone inside Memphis City Hall. Ms. Webster served MSCO as a communications strategist and community organizer from December 2014 through October 2016. Since then she has remained active in MSOC in a volunteer capacity.

43. Mr. Franklin is a citizen and resident of Memphis. He has neither made statements nor undertaken actions that could reasonably be construed as posing as a "security threat" to anyone inside Memphis City Hall. Mr. Franklin has served as an organizer for MSCO since the fall of 2016.

44. Plaintiff Cathey is a citizen and resident of Memphis. He has neither made statements nor undertaken actions that could reasonably be construed as posing as a "security threat" to anyone inside Memphis City Hall. Plaintiff Cathey has been active with MSOC since July of 2013 both on a volunteer basis and as an organizer. Plaintiff Cathey has worked full time for MSOC since early 2015 and currently holds the title of Memphis City Lead Organizer.

45. None of these individuals were aware that their names had been placed on the blacklist until widespread media reports surfaced identifying them.

46. Defendant Rallings, Director of the MPD, stated on a recorded YouTube video released by the MPD on or around February 21, 2017, that the blacklist was not "politically motivated" but rather intended to address "security concerns." Director Rallings acknowledged in that video that some of the names on the list may have been included "in error" and that after a further review of the blacklist, "those names that should not be included will be removed."

47. Defendant Strickland, Mayor of Memphis, also stated in an interview that some of the people on the list likely should not have been placed on the list.

48. The admissions of both Defendant Strickland and Defendant Rallings demonstrate that the blacklist was assembled in a manner in which the risk of a *bona fide* "security threat" was not the driving factor in the decision to include certain individuals such as those affiliated with MSOC.

49. In order to enter Memphis City Hall, an individual must go through a full body screen in a metal detector and submit any other personal items to an x-ray machine. Visitors must also give security guards their name, show identification if asked, and disclose the purpose of their visit. Thus, the City of Memphis already has in place significant measures to maintain security and order inside City Hall.

50. Placing MSCO organizers on an initially-secret list that requires them to be escorted by a security guard throughout City Hall is unconstitutional as it has the intended consequence of intimidating these organizers and dissuading them from entering this public space. None of these individuals have undertaken any actions or spoken any threats that would lead any reasonable person to conclude that they pose a viable security threat, especially after submitting to the security measures already in place for all visitors.

51. These individuals have been included in this unconstitutional and draconian blacklist solely due to their association with MSOC and their participation in MSOC's events and activities. There is no rational basis for Defendants to include these individuals on the blacklist.

### COUNT I: VIOLATION OF THE FIRST AMENDENT RIGHT
### TO FREE SPEECH
### (42 U.S.C. § 1983)

52. Plaintiffs re-allege all of the allegations in the preceding paragraphs.

53. Defendants' actions violate the Plaintiffs' First Amendment rights by both restricting their ability to speak and assemble and by having a chilling affect on their ability to exercise these basic constitutional rights.

54. As a proximate result of the Defendants' actions, the Plaintiffs have been deprived of their rights under the First Amendment and have suffered immediate and irreparable harm.

55. Defendants acted under color of state law when they engaged in the unconstitutional acts described above that abridged Plaintiffs' rights to freedom of speech as guaranteed by the First Amendment of the United States which is enforceable pursuant to 42 U.S.C. § 1983.

56. As a result of Defendants' actions, the Plaintiffs' ability to exercise their First Amendment rights has been curtailed and they have significant fear of retribution and harassment for exercising these rights in the future.

### COUNT II: ARTICLE 1, § 19
### OF THE TENNESSEE CONSTITUTION

57. Plaintiffs re-allege all of the allegations in the preceding paragraphs.

58. Article 1, § 19 of the Tennessee Constitution provides:

> The free communication of thoughts and opinions, is one of the invaluable rights of man and every citizen may freely speak, write, and print on any subject, being responsible for the above of that liberty…

59. Plaintiffs' right to freedom of speech and expression, as guaranteed by Article 1, § 19 of the Tennessee Constitution, continues to be violated as a result of the intimidation tactics and practices by Defendants as described above.

60. Defendants cannot establish a justification sufficient to regulate or otherwise chill Plaintiffs' speech.

61. Defendants acted under color of state law when they engaged in the above-described actions that had the affect of chilling and abridging Plaintiffs' rights to freedom of speech and expression as guaranteed by Article 1, § 19 of the Tennessee Constitution.

62. As a result of Defendants' actions, the Plaintiffs have been limited in their ability to exercise their rights under the Tennessee Constitution.

## COUNT III: BREACH OF CONSENT DECREE

63. Plaintiffs re-allege all of the allegations in the preceding paragraphs.

64. Defendants' inclusion of three MSOC organizers violates the Consent Order entered in *Kendrick et al. v. Chandler*, Civil Action No. C76-449, by improperly engaging in an action for the purpose of, or reasonably having the effect of, deterring any person from exercising First Amendment rights. Defendants are improperly chilling Plaintiff Cathey's speech, and the speech of MSOC, by prohibited Plaintiff Cathey and two other MSOC organizers from entering City Hall without a police escort.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request the following:

1) A Temporary Restraining Order prohibiting Defendants from enforcing the so-called "Blacklist" and requiring Plaintiffs to be escorted after passing through security at the Memphis City Hall;

2) That the Court waive Plaintiffs' requirement pursuant to Rule 65(c) to post a bond or otherwise give security should the injunctive relief be granted;

3) A hearing date for a preliminary injunction pursuant to Rile 65(a) be set;

4) An Order to show cause as to whether Defendants are in violation of the Consent Order entered in *Kendrick et. Al. v. Chandler*, Civil Action No. C76-449;

5) Injunctive and declaratory relief restraining Defendants from infringing on Plaintiffs' constitutional rights and otherwise affirming those rights;

6) Monetary damages as permitted under the law;

7) A jury trial;

8) Attorneys' fees and costs as permitted under the law; and

9) Any further as the Court deems just and proper and other relief as allowed by law.

Dated: March 1, 2017            Respectfully submitted,

/s/ Jerry E. Martin
**JERRY E. MARTIN (No. 20193)**
**DAVID W. GARRISON (No. 24968)**
**SCOTT P. TIFT (No. 27592)**
BARRETT JOHNSTON MARTIN & GARRISON, LLC
Bank of America Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
jmartin@barrettjohnston.com
dgarrison@barrettjohnston.com
stift@barrettjohnston.com

**MARY JOYCE CARLSON**
1130 Connecticut Avenue, N.W.
Suite 950
Washington, DC 20036
Telephone: (202) 230-4096
Facsimile: (202) 429-5565
carlsonmjj@yahoo.com
(pro hac vice anticipated)

15

## VERIFICATION OF COMPLAINT

I, Antonio Blair Cathey, under penalty of perjury states as follows:

I am familiar with the facts as stated herein and have read the Complaint and state under oath the facts herein are true to be the best of my knowledge, information and belief. I make this Verification pursuant to 28. U.S.C. § 1746 and declare under the penalty of perjury under the law of the United States of America, that the foregoing is true and correct.

Executed this 1st day of March, 2017.

/ANTONIO BLAIR CATHEY

16